# United States Court of Appeals
## For the First Circuit

No. 01-2386
No. 01-2397

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL MELÉNDEZ-SANTANA,

Defendant, Appellant.

APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, Chief U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Schwarzer,* Senior District Judge,

Carlos Lugo-Fiol for appellant Rafael Meléndez-Santana.
Francisco A. Ojeda-Diez with whom H.S. Garcia, United States
Attorney, and Sonia I. Torres, Assistant United States Attorney,
were on brief, for appellee.

December 24, 2003

_____

*Of the Northern District of California, sitting by
designation.

**LIPEZ, Circuit Judge**. This consolidated appeal of two criminal cases, Appeal Nos. 01-2386 and 01-2397, requires us to evaluate the validity of certain conditions of supervised release and the procedures used to impose those conditions. This evaluation, in turn, requires us to consider the amount of discretion a sentencing court may delegate to probation officers and whether a condition that is included in a written sentencing order but not announced at the sentencing hearing violates a defendant's constitutional rights.

## I.

In Appeal No. 01-2386, the defendant, Rafael Meléndez-Santana ("Meléndez"), and three other individuals met an undercover DEA agent and a police informant on August 21, 2000, in a shopping mall parking lot to purchase twenty-five kilograms of cocaine. The parties had previously negotiated a sales price of $12,000 per kilogram for a total of $300,000. Meléndez agreed to finance this purchase. When Meléndez opened the trunk of his car and showed the purported sellers a portion of the money, DEA agents arrested him and his associates. They found a Beretta 9mm pistol in his possession.

In Appeal No. 01-2397, Meléndez committed the crimes approximately three months prior to his arrest on the charges involved in Appeal No. 01-2386. The details regarding this earlier conduct as reported in the parties' stipulated statement of facts

are sparse. It appears that Meléndez dropped an individual off at the airport who was carrying $36,000 in a bag. A search of the van that Meléndez was driving produced approximately a kilogram of cocaine, approximately five hundred (500) grams of heroin and several weapons. The stipulated statement of facts did not indicate why Meléndez was not arrested at the airport on that day.

On September 21, 2000, a federal grand jury in Puerto Rico indicted Meléndez on four counts for the August 21 conduct. The indictment included one count of possession with intent to distribute more than five kilograms of cocaine, possession of a firearm in furtherance of a drug trafficking offense, possession of a firearm by a convicted felon, and aiding and abetting. Meléndez pled guilty to the drug possession and possession of a firearm in furtherance of a drug trafficking offense counts on January 23, 2001. On August 21, 2001, the district court sentenced him to a term of twenty-four months on the first charge and sixty months on the second. The terms were to be served consecutively. He was also sentenced to three years of supervised release.

At the end of that sentencing hearing, Meléndez's attorney advised the court that an information had been filed against Meléndez in Appeal No. 01-2397, the case involving the earlier criminal conduct at the airport. In that case, the government accused him of possession with intent to distribute one kilogram of cocaine and approximately five hundred grams of heroin.

-3-

Meléndez waived his right to indictment and the preparation of a Pre-Sentence Report (PSR) and pled guilty. In exchange for his plea, the parties agreed that he would be held accountable for more than four hundred grams but less than five hundred grams of cocaine. He was sentenced during the same hearing to a term of thirty-seven months of imprisonment, to be served consecutively to the sentence in Appeal No. 01-2386. He was also sentenced to a supervised release term of four years.

Meléndez filed a timely appeal from his sentences, raising a series of challenges to the length of his sentence and to the terms of his supervised release. After a careful review of the record, we affirm part of his sentences, vacate other portions and remand for re-sentencing by the district court.

## II.

We begin our analysis with some background information on the supervised release system. Congress abolished the existing parole system in the Sentencing Reform Act of 1984, § 212(a)(2), 98 Stat. 1999 (codified at 18 U.S.C. § 3583 (2000)), and replaced it with a new system of "supervised release." The two systems are similar in that both allow former inmates to reenter society under official control. However, under supervised release, courts, rather than the Parole Commission, are responsible for setting and enforcing the conditions of release.

The United States Sentencing Guidelines generally require courts to impose a term of supervised release to follow every felony--or when otherwise required by statute--and they give the courts the option to do so in all other cases. U.S.S.G. § 5D1.1. These terms normally last one to five years. Id. § 5D1.2(a).

The Guidelines list a series of conditions of supervised release that fall into three categories: 1) mandatory conditions that courts must include in every sentencing order; 2) standard conditions that are recommended but not required; and 3) special conditions that are not required but can be imposed under certain circumstances. U.S.S.G. § 5D1.3. The seven mandatory conditions include basic correctional provisions such as "the defendant shall not commit another federal, state or local offense," id. § 5D1.3(a)(1), and "the defendant shall not unlawfully possess a controlled substance," id. § 5D1.3(a)(2). The fifteen standard conditions generally relate to the defendant's responsibilities toward his probation officer. See, e.g., id. § 5D1.3(c)(3) ("[T]he defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer."). They also include rehabilitative requirements, such as a condition mandating that the defendant keep a job. Id. § 5D1.3(c)(5).

In addition to the mandatory and standard conditions, there are twelve "special" conditions listed in Sections 5D1.3(d) and 5D1.3(e) of the Guidelines. Section 5D1.3(d) consists of seven

special conditions that are recommended in situations in which certain predicate facts are present. For example, one provision bars defendants who have been convicted of felonies or used dangerous weapons in the course of their crimes from possessing a firearm or other dangerous weapon. Id. § 5D1.3(d)(1). Other provisions mandate that the defendants participate in drug and mental health treatment programs when the court finds that such treatment is necessary. Id. § 5D1.3(d). Section 5D1.3(e) lists additional special conditions that "may be appropriate on a case-by-case basis." These special conditions include a curfew, home detention and community service requirements. Id. § 5D1.3(e).[1]

If a released inmate violates the terms of supervised release, the court may impose serious punishments, up to and including requiring the violator to serve his release term in prison. 18 U.S.C. § 3583(e)(3). Under certain circumstances, such as where the defendant possesses illegal drugs or refuses to comply

---

[1]In addition to the listed conditions, courts can also impose conditions "to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission." U.S.S.G. § 5D1.3(b).

with drug testing requirements, the court must revoke his term of supervised release and reimprison him.  18 U.S.C. § 3583(g).  We turn now to Meléndez's specific claims.

## A.       Four Year Supervised Release Term

Meléndez claims--and the government agrees--that the district court erroneously departed from the United States Sentencing Guidelines when it sentenced him to a four-year supervised release term in Appeal No. 01-2397, the case involving the information and the earlier criminal conduct.  We concur.[2]

Before a court may impose a sentence exceeding the Guidelines, it "must give prior notice to the defendant of its intention to impose a term of such an extended duration and must state on the record the aggravating circumstances that justify the upward departure."  United States v. Matos  328 F.3d 34, 44 (1st Cir. 2003); see also Burns v. United States, 501 U.S. 129, 138-39 (1991).  The government charged Meléndez in an information with

---

[2]Meléndez did not object to this departure at sentencing.  In United States v. Cortes-Claudio, 312 F.3d 17, 24 (1st Cir. 2002), we held that while we generally review for plain error when a party fails to object at sentencing, we apply abuse of discretion review "if the defendant could not reasonably have anticipated the issue would arise until after the court ruled."  Since Cortes-Claudio could not reasonably have anticipated that the court would depart from the guidelines, we reviewed that sentence for abuse of discretion.  Id.  The same reasoning applies here.  In practical terms, however, the distinction between the two standards of review is irrelevant to the outcome of this case since we would reach the same result under plain error review.  See, e.g., United States v. Mangone, 105 F.3d 29, 36 (1st Cir. 1997) (finding plain error when the sentencing court departed upward without giving prior notice).

possession with intent to distribute one kilogram of cocaine and 500 grams of heroin in Appeal No. 01-2397. Meléndez waived indictment, trial, and the preparation of a Pre-sentence Report and agreed to plead guilty. Under the terms of that plea agreement, however, the parties stipulated that he would plead guilty to possession with the intent to distribute at least four hundred but less than five hundred grams of cocaine.

The original offense for which Meléndez was charged in the information carried a mandatory four-year term of supervised release, see 21 U.S.C. § 841(b)(1)(B), but the offense to which he actually pled guilty only carried a statutory mandatory term of three years of supervised release. 21 U.S.C. § 841(b)(1)(C). The sentencing court erroneously imposed the supervised release term that accompanied the original charge.[3] Since the resulting sentence exceeded the Guidelines for the offense for which he actually was found guilty, see U.S.S.G. § 5D1.2(a), and since the court failed to provide advance notice of this departure, we vacate the four-year supervised release provision in Appeal No. 01-2397. We also vacate the portion of the judgment that states that

---

[3]Our view that this was merely an oversight is supported by the thirty-seven month term of imprisonment that the court ordered. The offense level with which the sentencing judge started matches the Guidelines level for a crime involving four hundred but less than five hundred grams of cocaine but it is below the mandatory minimum sentence for crimes involving five hundred grams or more of cocaine. See 21 U.S.C. § 841(b)(1)(B) (setting a mandatory minimum prison sentence of five years for crimes involving five hundred grams but less than five kilograms of cocaine).

Meléndez pled guilty to possession with intent to distribute one kilogram of cocaine and five hundred grams of heroin. As noted, Meléndez actually pled guilty to possession with intent to distribute four hundred but less than five hundred grams of cocaine, and the judgment should be corrected to reflect this fact.[4]

**B.       Consecutive Sentences**

Meléndez claims that the district court erroneously ordered him to serve the sentences in Appeal Nos. 01-2386 and 01-2397 consecutively. In his view, the convictions should be considered multiple counts of the same case for sentencing purposes. He contends that the offenses all involved similar conduct, that these offenses occurred only three months apart, that he was not arrested until after he had taken the actions underlying the charges in both cases, and that both cases were disposed of on the same day in the same proceeding. On this basis, he argues that his sentences should run concurrently. See U.S.S.G. § 5G1.2; United States v. Quiñones, 26 F.3d 213, 217 (1st Cir. 1994)

---

[4]The sentencing court allowed the defendant to waive the preparation of a separate PSR for this hearing. A report had been prepared in the proceedings giving rise to Appeal No. 01-2386, and defense counsel claimed that a new PSR was unnecessary. Nevertheless, the Guidelines clearly state in a policy statement that "[t]he defendant may not waive preparation of the presentence report," U.S.S.G. § 6A1.1. The errors here illustrate the wisdom of that requirement. With a PSR in hand, the court would have recognized that the circumstances of the plea did not permit a four-year supervised release term, and would have entered a judgment that accurately reflected the terms of this plea.

(holding that a court may impose consecutive sentences for multiple-count cases only after following the accepted protocol for guideline departures).

The government asserts that Meléndez has waived this claim by failing to present it first to the district court. It also contends that, in any event, there was no plain error. As it notes, the court simply followed the parties' recommendation in their plea agreement by imposing a consecutive sentence in the second case after first securing Meléndez's confirmation that he had agreed to the consecutive sentence.[5]

Although Meléndez acknowledges that he agreed to the consecutive sentence, he contends that the plea agreement also stated that he would be sentenced in accordance with the Sentencing Guidelines and that the sentencing recommendation was in conflict with the Guidelines. Without case law or other support, he argues that we should resolve the conflict in favor of the Guidelines.

On these facts, we agree that Meléndez has waived his claim. We also agree that there was no plain error. The record shows that Meléndez entered into his plea agreement voluntarily and knowingly, realizing full well that he would receive the consecutive sentence that he did. In effect, Meléndez is asking us

---

[5]The agreement stated explicitly that "the appropriate disposition" of the case was a thirty-seven month term of imprisonment "to be served consecutively with the sentence imposed in [Appeal No. 01-2386]." (emphasis in original).

-10-

to relieve him of his obligations under the plea agreement, even though the government has lived up to its commitments. We decline to do so.

**C.        Conditions of Supervised Release**

Meléndez claims that the district court's imposition of conditions of supervised release included a number of procedural and substantive errors. Specifically, he claims that the court violated his Sixth Amendment right to be present at his sentencing by including a special drug treatment condition in the written sentencing orders without announcing that condition at the sentencing hearings. He also claims that the drug treatment provision constituted an impermissible delegation of judicial authority since it allowed a probation officer to determine whether he had to undergo treatment. He claims that a provision requiring him to undergo drug testing also constituted an impermissible delegation since it allowed the probation officer to decide how many drug tests he had to undergo. Finally, he claims that the court abused its discretion by requiring him to provide financial records to the probation officer, and again violated his Sixth Amendment rights by not imposing that financial records condition at one of his hearings. We will review each claim in turn.

**1.  The Drug Treatment Condition**

Meléndez claims that the sentencing court impermissibly delegated its sentencing authority by allowing a probation officer

to decide whether he might have to attend drug treatment. The condition states that if Meléndez tests positive for drugs, "at the discretion of the probation officer, [he shall] participate in a substance abuse treatment program arranged and approved by the probation officer until duly discharged by authorized program personnel with the approval of the probation officer." He also claims that since that condition was only included in the written orders setting forth the terms of supervised release but was never imposed as a condition at his sentencing hearing, the court violated his Sixth Amendment right to be present at sentencing.

## a. The Right to be Present at the Sentencing Hearing

Defendants have a right, guaranteed by the United States Constitution and the Federal Rules of Criminal Procedure, to be present during sentencing. See Fed. R. Crim. P. 43(a) ("[T]he defendant must be present at . . . sentencing."). The Supreme Court has stated that the constitutional aspect of this right is "rooted to a large extent in the Confrontation Clause of the Sixth Amendment," but that it also derives from the Fifth Amendment's Due Process Clause. United States v. Gagnon, 470 U.S. 522, 526 (1985). Although a defendant does not have a right to be present at every minor stage in a trial, due process concerns are implicated

> [w]henever [the defendant's] presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be

-12-

> thwarted by his absence, and to that extent only.

Id. (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 108 (1934)).  Since  the defendant's absence from a sentencing hearing could threaten his ability to obtain a fair and just hearing on the important issues of punishment and rehabilitation addressed at such a hearing, the Court's due process concerns in Gagnon are relevant to the sentencing stage of a trial.  See Thompson v. United States, 495 F.2d 1304, 1306 (1st Cir. 1974) ("[T]he alleged failure of petitioner to be present at his own sentencing is an error which . . . affects seriously the fairness, integrity and public reputation of judicial proceedings.").

As a consequence of the defendant's right to be present at the sentencing hearing, we have previously stated, in dicta, that "'[w]here . . . [a] district court's oral expression of its sentencing rationale varies materially from its subsequent written expression of that rationale, appellate courts have tended to honor the former at the expense of the latter.'"  United States v. Cali, 87 F.3d 571, 579 (1st Cir. 1996) (quoting dictum in United States v. Muniz, 49 F.3d 36, 42 n.5 (1st Cir. 1995)).  Nearly all of the other circuits have reached similar conclusions, although there has been some variation in the exact phrasing of this doctrine.  See, e.g., United States v. DeMartino, 112 F.3d 75, 78 (2d Cir. 1997) ("[I]f there is a variance between the oral pronouncement of sentence and the written judgment of conviction, the oral sentence

-13-

generally controls."); United States v. Faulks, 201 F.3d 208, 211 (3d Cir. 2000) ("A long line of cases provides that when the two sentences are in conflict, the oral pronouncement prevails over the written judgment."); United States v. Morse, 344 F.2d 27, 29 n. 1 (4th Cir. 1965) ("To the extent of any conflict between [a] written order and [an] oral sentence, the latter is controlling."); United States v. Martinez, 250 F.3d 941, 942 (5th Cir. 2001) ("[W]hen there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls."); United States v. Becker, 36 F.3d 708, 710 (7th Cir. 1994)("If an inconsistency exists between an oral and the later written sentence, the sentence pronounced from the bench controls."); United States v. Glass, 720 F.2d 21, 22 n.2 (8th Cir. 1983) ("Where an oral sentence and the written judgment conflict, the oral sentence controls."); United States v. Hicks, 997 F.2d 594, 597 (9th Cir. 1993) ("'In cases where there is a direct conflict between an unambiguous oral pronouncement of sentence and the written judgment and commitment, this [c]ourt has uniformly held that the oral pronouncement, as correctly reported, must control.'") (quoting United States v. Munoz-Dela Rosa, 495 F.2d 253, 256 (9th Cir. 1974)); United States v. Marquez, 337 F.3d 1203, 1207 n.1 (10th Cir. 2003) ("[A]n oral pronouncement of sentence from the bench controls over other written language . . . ."). Accordingly, we conclude that where the conditions of supervised release announced at the sentencing

-14-

hearing conflict in a material way with the conditions of supervised release in the written sentencing order, the oral conditions control.

The failure of the sentencing court to announce the drug treatment condition at the sentencing hearing created a material conflict between the written and oral sentencing orders. The court imposed a potentially significant new burden on the Defendant-- permitting a probation officer to order him to attend a residential treatment program if he failed a drug test--without giving him the opportunity to object to the condition at the sentencing hearing. This procedure violated Meléndez's right to be present at sentencing. We must vacate the drug treatment condition on this basis alone.

**b. Delegation**

There is another defect in the drug treatment condition that we must discuss to avoid future problems. That defect involves the amount of discretion that the court delegated to the probation officer to decide whether Meléndez must participate in a drug treatment program.

Article III of the Constitution vests responsibility for resolving cases and controversies with the courts. As Justice Kennedy observed during his tenure on the Ninth Circuit, this responsibility requires "both the appearance and the reality of control by Article III judges over the interpretation, declaration,

and application of federal law" to maintain "the essential, constitutional role of the judiciary." Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc., 725 F.2d 537, 544 (9th Cir. 1984) (Kennedy, J.). The judiciary's "essential role" can be eroded just as easily through improvident delegation as through interference by another branch, id.; therefore, separation of powers forbids courts from delegating their Article III responsibilities. However, "'[t]hat general principle does not . . . prohibit courts from using nonjudicial officers to support judicial functions, as long as that judicial officer retains and exercises ultimate responsibility.'" United States v. Allen, 312 F.3d 512, 515-16 (1st Cir. 2002) (quoting United States v. Johnson, 48 F.3d 806, 809 (4th Cir. 1995)).

In Allen, we upheld the sentencing court's imposition of a condition of supervised release that required the defendant to participate in a mental health treatment program "as directed by the probation officer." Allen, 312 F.3d at 515. We determined that the court itself retained ultimate sentencing authority by requiring the defendant to undergo treatment and that it had merely delegated "administrative details" to the probation officer. Id. at 516. In reaching this holding, we contrasted the facts in Allen with those in United States v. Kent, 209 F.3d 1073 (8th Cir. 2000), in which the court struck down a condition that allowed the probation officer to make the ultimate decision regarding whether

-16-

the defendant would have to undergo treatment.  Stated simply, the probation officer in <u>Allen</u> was not deciding <u>whether</u> the defendant had to attend counseling but how many sessions he had to attend. <u>See</u> <u>also</u> <u>United States</u> v. <u>Peterson</u>, 248 F.3d 79, 84-85 (2d Cir. 2001) (concluding that delegation would be permissible regarding scheduling and selection of mental health therapy sessions).

　　The sentencing court's delegation to the probation officer of the treatment decision in this case contravenes our ruling in <u>Allen</u>.  The drug treatment condition states that if Meléndez fails a drug test, he must participate in a treatment program "at the discretion of the probation officer."  Rather than simply vesting the probation officer with the responsibility for managing the administrative details of drug treatment, the court granted the probation officer the authority to decide whether Meléndez would have to undergo treatment after testing positive for drugs.[6]  That treatment decision must be made by the court, either at the time of sentencing,[7] or later in response to a motion by the

---

[6]We consider the determination of the type of program the defendant must enroll in and when he may be discharged to be administrative details that may be delegated to the probation officer.

[7]The United States Sentencing Commission treats the imposition of drug treatment as a special condition of supervised release to be imposed by the court.  <u>See</u> U.S.S.G. § 5D1.3(d)(4) ("If the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol--[it may include] a condition requiring the defendant to participate in a program approved by the United States Probation Office for substance abuse . . . .").

probation officer, citing the positive drug test during the period of supervised release and seeking a change in the conditions of supervised release.[8]

## 2. The Drug Testing Requirement

Meléndez claims that the district court impermissibly delegated its authority to a probation officer when it allowed the officer to decide how many drug tests he would be required to undergo. Since he failed to object to this aspect of his sentence below, we review for plain error. <u>Allen</u>, 312 F.3d at 514.[9]

## a. The Terms of the Order

The oral and written orders in these appeals conflict regarding the amount of discretion the court delegated to the probation officer. The written sentencing orders in both cases stated: "The defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug test within 15

---

[8]Rule 32.1 of the Federal Rules of Criminal Procedure outlines the steps that a probation officer must take to move for the modification of a defendant's terms of supervised release following a suspected violation. In pertinent part, the rule grants the defendant the right to a hearing before a magistrate judge to determine if there is probable cause to believe that he violated the terms of supervised release, Fed. R. Crim. P. 32.1(a) & (b), as well as the right to a hearing before a court to determine whether his terms of supervised release should be modified. Fed. R. Crim. P. 32.1(c).

[9]The government and the defendant both framed the issue on appeal as whether the district court impermissibly delegated the determination as to the timing and number of drug tests. Neither party, however, addressed the timing issue. Accordingly, we address only the issue of whether the court impermissibly delegated the determination of the number of drug tests.

days of release on supervised release and at least two (2) periodic drug tests thereafter, when so requested by the U.S. Probation Officer." The oral orders did not include the provision requiring "at least two (2) periodic drug tests therafter." The oral order in Appeal No. 01-2386 stated: "The defendant shall refrain from any unlawful use of controlled substances and shall submit to drug testing within 15 days of release on supervised release and thereafter whenever so required by the probation officer." The oral order in 01-2397 was virtually identical. Therefore, pursuant to the written orders, the probation officer had to require at least two additional drug tests after the initial drug test within fifteen days of release; however, under the oral orders, the probation officer could forego any additional drug tests after the initial test. Although there is a conflict between the oral and written orders as to the number of drug tests required, we do not have to decide if this is a material conflict requiring a ruling that the oral order controls. See supra Section II.C.1.a. That is so because both the oral and written orders suffer from the same delegation infirmity.

**b. Delegation**

Both a statute and the United States Sentencing Guidelines require the sentencing court to order that the defendant "refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and

-19-

at least 2 periodic drug tests thereafter (<u>as determined by the court</u>) for use of a controlled substance." 18 U.S.C. § 3583(d) (2000); U.S.S.G. § 5D1.3(a)(4) (emphasis added).[10] The court may only waive this requirement "if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant." 18 U.S.C. § 3563(a)(5); U.S.S.G. § 5D1.3(a)(4). Meléndez claims that the inclusion of the words "as determined by the court" means that the court, not the probation officer, must decide how many tests a defendant should be forced to undergo.

As noted, both the statute and the Guidelines state that following the initial "drug test within 15 days of release," there must be "at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance." 18 U.S.C. § 3583(d) (2000); U.S.S.G. § 5D1.3(a)(4). If there is any ambiguity in this text, it does not relate to the responsibility of the court to make the determination referenced in the statute. That responsibility could not be more explicit. But what is the determination that the court must make? The determination assigned to the court could either be the time frame for the two periodic drug tests mandated by the statute, or the number of additional

---

[10]The Guideline provision refers to release on "probation" instead of on "supervised release"; however, the provision is located in Section 5D1.3, which explicitly governs "Conditions of Supervised Release."

drug tests to be required beyond the initial drug test within 15 days of release and the two periodic tests required by the statute. As a matter of language, the phrase "at least" establishes a minimum and implies that a maximum remains to be determined. As a matter of common sense, we do not think that Congress would require courts to become involved in the scheduling of drug tests. However, Congress could reasonably assign to courts the responsibility for deciding the maximum number of drug tests to be performed beyond the minimum of three mandated by Congress. See United States v. Bonanno, 146 F.3d 502, 511 (7th Cir. 1998) (holding that "18 U.S.C. § 3583(d) requires that the court determine the number of drug tests to which the defendants must submit") (emphasis in original). Indeed, there is symmetry in the Congressional approach because both the statute and the Guidelines give the court the authority to waive the testing requirement completely upon a finding of "a low risk of future substance abuse by the defendant." 18 U.S.C. § 3563(a)(5); U.S.S.G. § 5D1.3(a)(4). To respond to concerns about a high risk of future substance abuse, the court can also establish the maximum number of drug tests to be performed.

This responsibility does not mean that the court has to specify the exact number of tests to be performed. Consistent with the statutory language, it may specify a range, allowing probation officers to exercise discretion on the number of drug tests to be

performed within that range.  See United States v. Guy, 174 F.3d 859, 862 (7th Cir. 1999) (concluding that a condition requiring the defendant to submit to "'random drug tests as ordered by the Probation Office, not to exceed 104 tests per year'" did not constitute plain error).  The court may not, however, vest the probation officer with the discretion to order an unlimited number of drug tests.

The government, arguing that this plain text reading of the statute and Guidelines should not control, requested that we uphold the condition by following the reasoning of the court in United States v. Smith, 45 F. Supp. 2d 914 (M.D. Ala. 1999).  The Smith Court evaluated a drug testing condition similar to the one in this case and rejected the defendant's delegation claim.

The Smith Court rested its holding on three arguments: 1) the Violent Crime Control and Law Enforcement Act of 1994 (the "1994 Act"), Pub. L. 103-322, which set forth the "(as determined by the court)" language in Section 3583(d), only used that language to describe the minimum of three tests that a court must impose pursuant to the plain language of § 3583(d), and to give courts discretion to reduce the minimum number of drug tests below three without requiring courts to set the maximum number of tests; 2) probation officers had the discretion to order drug tests prior to the passage of the 1994 Act and nothing in that act manifested Congress's intention to withdraw that discretion; and 3) limiting

the probation officers' discretion could limit the number of tests that a probationer is required to undergo and undermine the efficiency of the supervised release system.

We frankly find <u>Smith's</u> reading of the statutory language difficult to follow.  The phrase "as determined by the court" is unnecessary to achieve Congress's evident intent in Section 3583(d) to require courts, in the ordinary case, to require a minimum of three drug tests.  Remove the language "as determined by the court" from Section 3583(d) and the requirement that there be a minimum of three drug tests is still there.  If courts, in the exceptional case, want to disregard the requirement of Section 3583(d) that three drug tests be performed, and to order fewer or no tests, they already have that authority pursuant to 18 U.S.C. § 3563(a)(5).[11]  Again, the "as determined by the court" language in Section 3583(d) is unnecessary to achieve the purpose attributed to it by the <u>Smith</u> Court.  If this language is unnecessary to impose the requirement of three drug tests as the norm or to give courts the discretion to reduce or eliminate that minimum in exceptional cases, the "as determined by the court" language can only mean that the court is required to determine the maximum number of drug tests to be performed beyond the three that are required.  Otherwise, the

---

[11]That provision states that the mandatory drug testing condition "may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant . . . ."  18 U.S.C. § 3563(a)(5).

-23-

language is superfluous. See, e.g., Allende v. Shultz, 845 F.2d 1111, 1117 (1st Cir. 1988) ("'It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed.'") (quoting Montclair v. Ramsdell, 107 U.S. (17 Otto) 147, 152 (1883)).

The Smith Court says that the "as determined by the court" language gives the court discretion to alter the maximum number of drug tests but does not require it to do so, leaving intact the authority of probation officers to determine the maximum number of drug tests to be performed. This reading simply ignores the plain language of Section 3583(d), which gives the courts the responsibility to determine the maximum number of drug tests beyond three that would be required. Courts cannot fulfill this Congressionally-assigned responsibility by assigning it to probation officers. To the extent that the Smith Court makes a fair policy point that it is impractical to expect courts to decide years before a defendant is released "exactly how many drug tests would be required after the defendant's release from prison," Smith, 45 F. Supp. 2d. at 918, the authority of courts to set a range of drug tests to be performed pursuant to the statutory language meets this practical concern.

While it is true that, prior to the passage of the 1994 act, probation officers had discretion to order tests independently of any directive from the court, see Smith, 45 F. Supp. 2d at 917 (noting that "probation officers had broad discretion to administer drug tests, without specific authorization from the sentencing court"), we conclude that Congress's refusal to include probation officers in the section of the 1994 Act that became 18 U.S.C. § 3583(d) manifests its intent to alter the existing practice. Congress explicitly referred to "the chief probation officer in each district" in another section of the 1994 Act and conferred upon those officers the responsibility of establishing a drug testing program. See Section 20414 (codified at 18 U.S.C. § 3608).[12] Congress clearly understood the role of probation officers in providing for and administering drug programs, yet Congress included no reference to probation officers in the drug testing language of 18 U.S.C. 3583(d); instead, it referred only to courts

_____

[12]That provision states:
The Director of the Administrative Office of the United States Courts, in consultation with the Attorney General and the Secretary of Health and Human Services, shall, subject to the availability of appropriations, establish a program of drug testing of Federal offenders on post-conviction release. The program shall include such standards and guidelines as the Director may determine necessary to ensure the reliability and accuracy of the drug testing programs. In each judicial district the chief probation officer shall arrange for the drug testing of defendants on post-conviction release pursuant to a conviction for a felony or other offense described in section 3563(a)(4).
18 U.S.C. § 3608 (2000).

determining the number of drug tests.  See Keene Corp. v. United States, 508 U.S. 200, 208 (1993) ("'[W]here Congress includes particular language in one section of a statute but omits it in another . . . [,] it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (citation omitted).

Furthermore, the general statutory provisions in the Sentencing Reform Act of 1984, P.L. 98-473,§ 212(a)(2), 98 Stat. 2002 (codified at 18 U.S.C. § 3603), relied on by the Smith Court as evidence that Congress gave probation officers the authority to require drug tests, were superceded by the more specific provision in the 1994 Act that explicitly gave that power to courts. According to the Smith Court, three provisions in the Sentencing Reform Act grant probation officers authority to determine the maximum number of drug tests to be performed:

> Section 3603 . . . provides that probation officers shall "keep informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of . . . a person on supervised release, who is under his supervision," 18 U.S.C.A. § 3603(2), "use all suitable methods, not inconsistent with the conditions specified by the court, to aid . . . a person on supervised release who is under his supervision, and to bring about improvements in his conduct and condition," 18 U.S.C.A. § 3603(3), and "keep informed concerning the conduct, condition, and compliance with any condition of probation ... of each probationer under his supervision." 18 U.S.C.A. § 3603(7). These provisions clearly grant probation

> officers significant discretion in the means
> they use to accomplish a court's order.

Smith, 45 F. Supp. 2d at 919.  Notably, these responsibilities are framed in general terms, and none of the cited provisions explicitly reference drug testing.  Moreover, the specific drug testing language of 18 U.S.C. § 3583(d) post-dates the Sentencing Reform Act by ten years.  See Natural Res. Def. Council, Inc. v. E.P.A., 824 F.2d 1258, 1278 (1st Cir. 1987) ("[T]he most recent and more specific Congressional pronouncement will prevail over a prior, more generalized statute.").  We reject the government's invitation to use the general language of the 1984 act as a justification for ignoring Section 3583(d)'s plain, explicit text.

To be sure, there is some force to the Smith Court's concerns about the policy advantages of a supervised release system that allows probation officers to decide the extent of drug testing.  Legislative history does not reveal why Congress chose to go in a different direction.  But we cannot be faithful to the Congressional choice if we allow any policy reservations to control our reading of statutory language.  By its plain terms, Section 3583(d) requires courts to determine the maximum number of drug tests to be performed beyond the statutory minimum of three, with probation officers permitted to decide the number of tests to be performed within the range established by the court.[13]

---

[13]     We entertained the possibility in United States v. Merric, 166 F.3d 406, 409 (1st Cir. 1999) that a court could

Since we conclude that the sentencing court's drug

---

satisfy its responsibility under a statutory provision stating "[t]he length of time over which scheduled [fine] payments will be made shall be set by the [sentencing] court," 18 U.S.C. § 3572(d)(2), by delegating that responsibility to a probation officer, see id. ("conceivably, 'set' could include delegation"). However, we rejected that possibility because "it is the inherent responsibility of the judge to determine matters of punishment and this includes final authority over all payment matters." Id. Other courts reviewing similar language have held that Congress's use of the word "set" precludes delegation. United States v. McGlothlin, 249 F.3d 783, 785 (8th Cir. 2001) ("We interpret this statement to require the district court to set a detailed payment schedule at sentencing."). We do not have to rule out the possibility that in some statutory settings phrases such as "set by the court" or "determined by the court" could include delegation to conclude here that the phrase "as determined by the court" does not permit delegation. As noted, prior to the enactment of Section 3583(d) as part of the Violent Crime Control and Law Enforcement Act of 1994, probation officers already had the authority to establish the maximum number of drug tests to be performed. If Congress wanted the courts to delegate that responsibility to probation officers, there was no need for Section 3583(d).

There is an instructive precedent in Congress's enactment in 1996 of the Mandatory Victims Restitution Act. In that act, Congress amended general pre-existing language when it required courts to "set" the restitution payment schedule. The Eleventh Circuit found that amendment to be significant on the delegation issue:

> In contrast, the predecessor statute to the MVRA, the Victims and Witness Protection Act of 1982, provided that the court could "require that [the] defendant make restitution ... within a specified period or in specified installments," but did not expressly state that the court must set the terms of repayment in the restitution order. By contrast, the plain language of the MVRA expressly precludes delegation of repayment scheduling to the probation office by providing that "the length of time over which scheduled payments will be made shall be set by the court ...." 18 U.S.C. § 3572(d)(2). This new language has removed any ambiguity that might have existed in the predecessor statute regarding the permissibility of delegating authority to determine the installment schedule.

United States v. Prouty, 303 F.3d 1249, 1254 n.3 (11th Cir. 2002).

testing condition delegated its sentencing authority in violation of a clear Congressional mandate, and that this disregard of the Congressional mandate was plain error, we must vacate the drug testing provisions in Meléndez's sentences and remand for re-sentencing.

**3.        Disclosure of Financial Information**

The sentencing court included a special condition in its written orders that required Meléndez to "provide the U.S. Probation Officer access to any financial information upon request and produce evidence to the effect that annual income tax returns have been duly filed within his place of residence as required by law."  The court did not mention that condition at the first hearing, Appeal No. 01-2386, but it did mention it at the second. Meléndez claims that the court erred substantively, since neither conviction warranted the inclusion of this condition, and procedurally since it failed to include the condition in the oral order in Appeal No. 01-2386.  We will first evaluate whether the sentencing court substantively abused its discretion by including this condition.[14]   An infirmity there would moot Meléndez's procedural claim.

**a.  Substantive Concern**

Guideline § 5D1.3(d) states as follows:

---

[14]We are reviewing Meléndez's substantive claim for abuse of discretion because he did not have the opportunity to object to this provision in Appeal No. 01-2386.

> The following "special" conditions of
> supervised release are recommended in the
> circumstances described and, in addition, may
> otherwise be appropriate in particular cases:
>
> ...
> 3) <u>Access to Financial Information</u>
> If the court imposes an order of restitution,
> forfeiture, or notice to victims, or orders
> the defendant to pay a fine--a condition
> requiring the defendant to provide the
> probation officer access to any requested
> financial information.

U.S.S.G. § 5D1.3(d)(3).

The court, after taking Meléndez's financial condition into account, did not include a fine as part of his sentence and did not order him to pay restitution; therefore, he does not meet the listed conditions. That does not mean, however, that the court was not justified in imposing the disclosure requirement. The Guidelines allow such conditions when they are "appropriate in particular cases." <u>Id.</u> "A sentencing judge has broad discretion to impose special conditions of release that are 'reasonably related' to (1) the defendant's offense, history and characteristics; (2) the need for adequate deterrence; and (3) the need to protect the public from further crimes of the defendant." <u>United States</u> v. <u>Phaneuf</u> 91 F.3d 255, 263 (1st Cir. 1996).

According to the stipulated statement of facts accompanying the plea agreement in Appeal No. 01-2386, Meléndez was responsible for financing the purchase of twenty-five kilograms of cocaine at a cost of $300,000. In Appeal No. 01-2397, the

passenger he dropped off at the airport was found with $36,000 in cash in a bag. Forcing Meléndez to provide financial records to the probation officer would assist the officer in detecting whether he has returned to his criminal ways. As we recently observed when we upheld a similar condition imposed under similar circumstances:

> The special condition allows the court, through the probation department, to monitor the appellant's earnings and identify any potential disparity between his income and his lifestyle. Relatedly, it serves to deter the appellant from engaging in schemes similar to the crimes of conviction once he is released from prison by forcing him to account for his income.

United States v. Mansur-Ramos, 348 F.3d 29, 33 (1st Cir. 2003). Given the circumstances of this case, we conclude that the district court's imposition of this condition did not constitute an abuse of discretion.

**b.        Right to Be Present at Sentencing**

Meléndez also claims that the court violated his right to be present during sentencing by not including the special financial disclosure condition in the oral sentencing order for the first sentence that the court imposed on August 21. Assuming arguendo that the court's failure to include the disclosure condition in its oral sentencing order violated Meléndez's right to be present at sentencing, we conclude that this error was harmless.

The court included the financial disclosure requirement in its oral sentencing order for Appeal No. 01-2397. Meléndez had

the opportunity to either object or to provide additional arguments at that time, but he failed to do so. Given that failure, he would not have objected if the court noted the same requirement at the hearing for Appeal No. 01-2386, held immediately prior to the second sentencing hearing. The court's error, therefore, was harmless. See Rushen v. Spain, 464 U.S. 114, 119 n.2 (1983) (noting that "right to be present" claims are subject to harmless error analysis). Accordingly, we affirm the inclusion of the special financial disclosure condition in Appeal No. 01-2386.

## III.

For the foregoing reasons, we VACATE the supervised release conditions regarding drug treatment and drug testing in both appeals as well as the four year supervised release term in Appeal No. 01-2397; we ORDER modification of the judgment in Appeal No. 01-2397; we AFFIRM the remainder of the sentences; and we REMAND for re-sentencing in both appeals consistent with this opinion.

**SO ORDERED.**