**F I L E D**

**UNITED STATES COURT OF APPEALS**

**August 25, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL KEITH HUFFMAN,

    Defendant - Appellant.

No. 04-3338
(D. Kansas)
(D.Ct. No. 98-CR-40068-02-JAR)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

Michael K . Huffman appeals an order of the United States District Court

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

for the District of Kansas placing him on supervised release[1] for a term of four years subject to a special condition that he "shall reside in a halfway house program for a period of up to 120 days, in the community corrections component, allowing for work release and at the discretion and direction of the U.S. Probation Officer."[2] (R. Vol. I, Doc. 189 at 4.) On appeal, Huffman contends the district court had no legal authority to impose confinement in a community corrections facility (halfway house) as a condition of supervised release and, even if it did, the court unconstitutionally delegated to the United States Probation Officer its authority to determine whether and for how long Huffman should remain in such a

---

[1] This is the second time Huffman has been placed on supervised release. On November 5, 1998, he pled guilty to 1) conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, 2) manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1), 3) endangering human life while manufacturing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 858, and 4) distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). On April 16, 1999, he was sentenced to concurrent terms of sixty months imprisonment followed by five years of supervised release. Huffman violated the conditions of his supervised release, and on June 9, 2003, a petition to revoke his supervised release was filed. Huffman stipulated to violating two of his conditions of supervised release and was sentenced to ten months imprisonment. The court also imposed a four year term of supervised release, including the special condition that is the subject of this appeal.

[2] Huffman avers that the language in the court's written order differs from its oral pronouncement at the revocation hearing and that the language of the latter controls. At the revocation hearing on August 30, 2004, the court stated "the defendant shall reside in a halfway house for a period of up to 120 days in the community corrections component, allowing for work release, again, at the discretion of the U.S. Probation Office[.]" (R. Vol. II at 5.) We discern no material difference between the court's oral pronouncement at the hearing and the language in its written order revoking supervised release. Neither, however, is a model of clarity.

facility.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM.

**DISCUSSION**

Ordinarily, we review the legality of a sentence de novo.  *United States v. Price,* 75 F.3d 1440, 1446 (10th Cir. 1996).  However, Huffman did not object to the imposition of the challenged special condition at his revocation of supervised release hearing, and we therefore review his claim for plain error.  *See* FED. R. CRIM. P. 52(b); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (claim not presented to district court reviewed for plain error).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* at 732 (internal quotation marks omitted).  "We conduct this analysis less rigidly when reviewing a potential constitutional error."  *United States v. Dazey,* 403 F.3d 1147, 1174 (10th Cir. 2005) (internal quotation marks omitted).  On the other hand, we enjoy discretion to notice plain error under the fourth prong of the plain error test.  *See* FED. R. CRIM. P. 52(b).

### *Authority to Order Community Confinement*

First, Huffman contends the district court acted *ultra vires* in requiring he

-3-

reside in a community corrections facility as a condition of supervised release.[3]

He points out that confinement in a community corrections facility is specifically

excluded under 18 U.S.C. § 3583(d) as a condition of supervised release which a

court may impose. *See* 18 U.S.C. § 3583(d) ("The court may order, as a . . .

condition of supervised release . . . any condition set forth as a discretionary

condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through

(b)(20) . . . ."); 18 U.S.C. § 3563(b)(11) (allowing, as a condition of probation,

confinement in a community corrections facility).

18 U.S.C. § 3563(b) was amended in 1996.  Prior to its amendment, the

condition that allowed confinement in a community corrections facility as a

condition of probation, § 3563(b)(12), was cross-referenced in § 3583(d), thus

authorizing a court to impose the same condition in granting supervised release.

The 1996 amendments deleted § 3563(b)(2) (payment of a fine) and renumbered

the remaining sub-sections.  Consequently, the former (b)(12) became (b)(11).

*See* Pub. L. No. 104-132, Title II § 203(2)(A), (B), 110 Stat. 1227 (1996).

Congress failed to amend § 3583(d) to conform to the amendments it made to §

---

[3] "'Community confinement' means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours." USSG §5F1.1, comment. (n.1).

3563(b).  Without a conforming amendment, § 3583(d) appeared to explicitly exclude confinement in a community corrections facility (now (b)(11)) as a condition of supervised release.[4]

The guidelines recognize the unhinged relationship between §§ 3583(d) and 3563(b) as a consequence of the 1996 amendments to § 3563(b).[5]  A policy statement clarifies that confinement in a community corrections facility remains vital, even after the 1996 amendments to § 3563(b), as a permitted condition of supervised release.  *See* USSG §5D1.3(e)(1) (special conditions that may be appropriate to supervised release include community confinement); USSG §5F1.1 ("Community confinement may be imposed as a condition of probation or supervised release.").  Of interest is a Note to USSG §5D1.3(e)(1) (repeated as a Note to USSG §5F1.1):

Section 3583(d) of title 18, United States Code, provides that "[t]he

_____

[4] Prior to the 1996 amendments, § 3563(b)(11) allowed for intermittent incarceration.  For obvious reasons, it was not a permitted condition of supervised release. *See United States v. Bahe,* 201 F.3d 1124, 1132 (9th Cir. 2000) ("Intermittent incarceration is not an appropriate condition of a defendant's supervised release following his release from prison because a defendant cannot be released until he or she has already served his full term of imprisonment.").  As a consequence of the 1996 amendments renumbering the former (b)(11) as (b)(10) and Congress' failure to enact a conforming amendment to § 3583(d), intermittent incarceration appeared to become a permitted condition of supervised release.

[5] The United States Sentencing Commission, *Guidelines Manual* (Nov. 2003) applied to Huffman's revocation of supervised release on August 30, 2004. *See* 18 U.S.C. § 3553(a)(4)(A)(ii) (guidelines in effect on date of sentence govern).  Therefore, all references to the guidelines refer to the 2003 edition.

court may order, as a further condition of supervised release . . . any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate." Subsection (b)(11) of section 3563 of title 18, United States Code, is explicitly excluded as a condition of supervised release. Before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, the condition at 18 U.S.C. § 3563(b)(11) was intermittent confinement. The Act deleted 18 U.S.C. § 3563(b)(2), authorizing the payment of a fine as a condition of probation, and redesignated the remaining conditions of probation set forth in 18 U.S.C. § 3563(b); intermittent confinement is now set forth at subsection (b)(10), whereas subsection (b)(11) sets forth the condition of residency at a community corrections facility. It would appear that intermittent confinement now is authorized as a condition of supervised release and that community confinement now is not authorized as a condition of supervised release.

However, there is some question as to whether Congress intended this result. Although the Antiterrorism and Effective Death Penalty Act of 1996 redesignated the remaining paragraphs of section 3563(b), it failed to make the corresponding redesignations in 18 U.S.C. § 3583(d), regarding discretionary conditions of supervised release.

While we recognize that "statutes trump guidelines when the two conflict," *United States v. Kimler,* 335 F.3d 1132, 1145 (10th Cir.), *cert. denied* 540 U.S. 1083 (2003), we must first determine whether the two conflict at all. This requires us to construe § 3583(d). Our canvass of the reporters indicates that several circuit courts have undertaken this task. The ninth circuit exhaustively reviewed the legislative history of §§ 3563(b) and 3583(d) and concluded:

The absence of a reference in § 3583(d) to the subsection of § 3563(b) that authorizes community confinement for rehabilitative purposes was an inadvertent clerical error made twelve years after

-6-

the enactment of § 3583(d). The clerical error was the result of the complex drafting process involved in enacting the Mandatory Victims Restitution Act of 1996 (MVRA). The MVRA made changes to § 3563(b), not to § 3583(d). Because the literal application of this clerical error in § 3583(d) will produce a result demonstrably at odds with the intentions of its drafters, it cannot control the meaning of the statute. Therefore, it does not signify that a district court lacks the authority to impose confinement in a community treatment center or halfway house for rehabilitative purposes as a condition of supervised release following imprisonment. Indeed, the legislative history establishes that Congress unambiguously intended that a district court have such authority.

*Bahe,* 201 F.3d at 1125-26 (internal quotation marks and citation omitted). The

eighth circuit agrees, relying on a settled rule of statutory construction:

> Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute . . . . Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications by the statute so taken unless it does so by express intent. The weight of authority holds this rule respecting two separate acts applicable where, as here, one section of a statute refers to another section which alone is amended.

*United States v. Griner,* 358 F.3d 979, 982 (8th Cir. 2004) (internal quotation

marks omitted). "When enacted by Congress § 3583(d) adopted particular

provisions of § 3563(b) by a specific and descriptive reference, and therefore we

believe that it was as if the language of those subsections was made a part of §

3583(d)." *Id.* (internal quotation marks omitted). Inasmuch as Congress had not

since amended § 3583(d) to alter its inclusion of confinement in a community

corrections facility as a permitted condition of supervised release, it remained so.

*Id.* The first circuit agrees with the reasoning of both the eighth and the ninth circuits, *see United States v. D'Amario,* No. 04-2566, 2005 WL 1477217 at *2 (1st Cir. June 23, 2005), and so do we. We therefore hold that confinement in a community corrections facility remains a permitted condition of supervised release under 18 U.S.C. § 3583(d).[6] This being so, there is no error and Huffman's claim fails the plain error test.

### *Delegation of Authority to Probation Officer*

Next, citing to U.S. CONST. art. III, § 1, cl. 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."), Huffman contends the district court unconstitutionally delegated to the probation officer its authority (a) to order Huffman to a community corrections facility as a condition of supervised release and (b) to determine the length of time, up to 120 days, that Huffman would reside in such a facility. We easily dispose of the first part of his argument. We decline to give a strained reading, as Huffman urges, to the court's order that he "*shall reside in a halfway house program for a period of up to 120 days,* in the community corrections component, allowing for work release and at

---

[6] 18 U.S.C. § 3583(d) states several predicate findings that the district court must make before considering permitted conditions of supervised release. Discussion of these required findings is not material to the disposition of this appeal; nor do we mean to imply by our holding that the district court is not bound to make these predicate findings.

the discretion and direction of the U.S. Probation Officer." (R. Vol. I, Doc. 189 at 4) (emphasis added).) Without difficulty, we construe the last clause of the order to qualify the maximum number of days the court established for Huffman's community confinement, not the order for community confinement itself. Therefore, the court did not unconstitutionally delegate to the probation officer its authority to require Huffman to reside in a community corrections facility as a condition of his supervised release.

As to Huffman's claim that the court unconstitutionally delegated to the probation officer its authority to determine the length of his residence in the community corrections facility, we must first determine whether or not the order confers such authority on the probation officer.[7] If it does, we must next inquire into the constitutionality of such a provision. Based on the argument of the parties, the first inquiry is easily answered. The plain language of the order confers authority on the probation officer to determine the length of Huffman's stay in the community corrections facility up to 120 days.[8] The second inquiry is

---

[7] It is with some wonderment that we address this issue. If the defendant saw the condition as truly objectionable, as opposed to intellectually satisfying but otherwise vacuous *post hoc* appellate nit picking, he would have objected at the time. It is difficult to imagine, and Huffman has not explained, how a condition obviating the need to file a petition with the court, rewarding good behavior and expediting early release, could redound other than to his benefit.

[8] We recognize the court's order is capable of being construed in either of two other ways: 1) the discretion conferred on the probation officer is the discretion only to recommend to the court that Huffman be released early from the community corrections

more nuanced.

The Supreme Court long ago contoured the judicial power conferred by Article III of the Constitution:

> Indisputably under our constitutional system, the right to try offenses against the criminal laws, and, upon conviction, to impose the punishment provided by law, is judicial, and it is equally to be conceded that, in exerting the powers vested in them on such subject, courts inherently possess ample right to exercise reasonable, that is, judicial, discretion to enable them to wisely exert their authority.

*Ex Parte United States,* 242 U.S. 27, 41-42 (1916). A corollary of this proposition is that the federal judicial power cannot be delegated to a non-Article III person or entity, such as a probation officer. *See United States v. Pruden,* 398 F.3d 241, 250 (3d Cir. 2005) (limitation on delegation of judicial authority to probation officer "is of constitutional dimension, deriving from Article III's grant of authority over 'cases and controversies' to the courts"). With these twin propositions in mind, we examine the relationship between a federal district court and a probation officer.

We first observe that a probation officer is an adjunct of the court itself.

---

facility, *see* 18 U.S.C. § 3603(2) (duty of probation officer to report to court on condition of supervisee), with the court making the final decision on release, *see* 18 U.S.C. § 3583(e)(2) (authority of court to modify terms of supervised release); or 2) the discretion of the probation officer does not qualify Huffman's period of residence in the community corrections facility at all, but simply qualifies his entitlement to work release. While either construction of the court's order would have required a less nuanced disposition of this appeal, neither was urged by the Government. This being so, we need not further consider the question.

*See* 18 U.S.C. § 3602(a) (district court shall appoint and may remove probation officers). Section 3603 lists a multitude of duties of a probation officer, including a catch-all that he/she shall "perform any other duty that the court may designate." 18 U.S.C. § 3603(10). "[T]he probation officer serves as an investigative and supervisory arm of the court . . . subject, of course, to constitutional restraints." *United States v. Davis,* 151 F.3d 1304, 1306 (10th Cir. 1998) (internal quotation marks omitted). *See also Pruden*, 398 F.3d at 250 ("Probation officers have broad statutory authority to advise and supervise probationers . . . [b]ut the breadth of these powers is limited by the probation officer's status as a nonjudicial officer. The most important limitation is that a probation officer may not decide the nature or extent of the punishment imposed upon a probationer." (internal quotation marks and citation omitted)); *United States v. York,* 357 F.3d 14, 21 (1st Cir. 2004) ("Federal courts are not prohibited from using nonjudicial officers to support judicial functions, as long as th[e] judicial officer retains and exercises ultimate responsibility[,]" and the nonjudicial officer makes no "significant penological decision[.]" (internal quotation marks omitted)). "As a practical matter, then, the probation officer serves as a liaison between the sentencing court, which has supervisory power over the defendant's term of supervised release, and the defendant, who must comply with the conditions of his supervised release or run the risk of

-11-

revocation." *Davis,* 151 F.3d at 1306-1307.

> Delegations [of authority] to probation officers may be less likely to be [constitutionally] problematic than those involving other officials because probation officers, while not judicial officers, are statutorily bound to serve within the jurisdiction and under the direction of the appointing court. They function as an arm of the court, and the Sentencing Guidelines themselves entrust many correctional decisions to their discretion . . . . As a practical matter, moreover, many district courts must rely on probation services to ensure the efficient administration of justice in criminal cases.

*York*, 357 F.3d at 22 n.6 (internal quotation marks and citations omitted). With the foregoing precepts in mind, we evaluate whether the district court's delegation of authority to the probation officer in this case implicates a "significant penological decision." *Pruden*, 398 F.3d at 250.

In *United States v. Overholt*, one of the defendants was ordered at sentencing to pay restitution ($1,265,078) immediately, with the proviso that any amount he could not immediately pay would be paid according to a schedule set by the Bureau of Prisons while he was imprisoned and by his probation officer while on supervised release. 307 F.3d 1231 (10th Cir. 2002). We concluded this order was an unconstitutional delegation of authority to nonjudicial officers because a statute specifically required the court to establish a payment schedule. *Id.* at 1236, 1255. *See also* 18 U.S.C. § 3664(f)(2) ("the court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid . . . ."). "The district court . . . was essentially

delegating the preparation of a payment schedule to the Bureau of Prisons and the probation office. Our sister circuits are split on whether such delegation is lawful, although a majority forbid it. In our view, such delegation is improper and constitutes plain error." *Overholt,* 307 F.3d at 1255. "In light of [the] statutory scheme, we see no room for delegation by the district court with respect to payment schedules for restitution." *Id.* at 1256.

On the other hand, in *Davis* we concluded a probation officer's authority to initiate revocation of supervised release proceedings did not violate Article III:

> [T]he sentencing court at most delegates to probation officers the power to recommend revocation proceedings, and in light of probation officers' duty to report, the district court may be delegating no authority at all. Considering the sentencing court's reliance on the probation officer's supervisory and investigative functions and retention of discretionary power to invoke revocation proceedings, no improper delegation of judicial power occurs.

151 F.3d at 1307. The delegation of authority in Huffman's case falls somewhere between the forbidden delegation of a "significant penological decision" in *Overholt* and the permitted delegation of authority (if a delegation at all) in *Davis.*

Decisions of the first circuit provide enlightened guidance in our inquiry. In *York*, the court reviewed a condition of supervised release requiring the defendant to attend a sex offender treatment program, with the added proviso that he submit to periodic polygraph testing to assure his faithful adherence to the

requirements of the program. 357 F.3d at 18. York attacked the polygraph proviso on the ground, *inter alia*, it was an unconstitutional delegation of judicial power to a nonjudicial officer (his probation officer) in that the court failed to specify the frequency, duration and scope of the polygraph examinations. *Id.* at 21. The court concluded that the district court order adequately tied the scope of the polygraph examinations to York's adherence to the requirements of his sex offender program. *Id.* at 22. As to the frequency and duration of the polygraph examinations, "[t]he district court committed no error in allowing York's probation officers to determine these details[]" because the court itself ordered York to enroll in a sex offender treatment program and undergo periodic polygraphs to ensure his adherence to this obligation. Therefore, it had delegated no "significant penological decision" to the probation officer. *Id.* at 21. *See also United States v. Allen,* 312 F.3d 512, 515-16 (1st Cir. 2002) (no unlawful delegation of authority to probation officer where court orders mental health treatment as term of supervised release and probation officer may determine when treatment obligation is fulfilled).

The first circuit in *York* distinguished its earlier decision in *United States v. Melendez-Santana* in which it overturned a condition of supervised release that authorized the probation officer to determine whether Melendez-Santana needed to enroll in a drug treatment program in the event he tested positive for drugs.

-14-

353 F.3d 93 (1st Cir. 2003). "Rather than simply vesting the probation officer with the responsibility for managing the administrative details of drug treatment, the court granted the probation officer the authority to decide whether Meléndez would have to undergo treatment after testing positive for drugs. That treatment decision must be made by the court[.]" *Id.* at 101 (footnote omitted). *See also Pruden,* 398 F.3d at 251 (finding an unconstitutional delegation of authority in a condition of supervised release allowing probation officer to determine need for mental health treatment); *United States v. Kent,* 209 F.3d 1073, 1079 (8th Cir. 2000) (unlawful delegation of judicial authority where probation officer authorized to determine if person sentenced must attend a psychological/ psychiatric counseling program). The court in *Melendez-Santana* encapsulated what it considered constitutionally permitted administrative details: "We consider the determination of the type of program the defendant must enroll in and when he may be discharged to be administrative details that may be delegated to the probation officer." 353 F.3d at 101 n.6.

In the context of the foregoing authorities, we recognize it is a close call whether the district court in this case could lawfully repose authority in the probation officer to determine, within court-set limits, the length of time Huffman should remain in community confinement while on supervised release. We need not reach the issue, however, because even if the district court erred, it is not

plain error justifying reversal because the error did not affect Huffman's substantial rights and does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See Gonzalez-Huerta,* 403 F.3d at 732 (explaining third and fourth prongs of plain error test).

Huffman bears the burden of demonstrating his substantial rights were affected by any error committed by the district court, even if the error is of constitutional dimension. *Id.* at 733. To meet his burden, Huffman must demonstrate "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted). This he cannot do. Without the challenged provision allowing the probation officer to release him in less than 120 days, Huffman would have to petition the court for an early release. *See* 18 U.S.C. § 3583(e)(2) (the court "may modify, reduce or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release[.]"); 18 U.S.C. § 3603(2) (probation officer shall "keep informed . . . as to the conduct and condition of a . . . person on supervised release . . . and report his conduct and condition to the sentencing court."). The option to petition the court for an early release always exists, irrespective of discretion given to the probation officer. Nothing prevented Huffman from exercising that form of self help–an opportunity to obtain complete relief. Moreover, he is unable to show the district court would

have released him from community confinement in less than 120 days. Therefore, he has not demonstrated an injury to his substantial rights.

Even if Huffman was able to demonstrate his substantial rights were affected by the challenged provision of his supervised release, he bears the burden of demonstrating any error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta,* 403 F.3d at 736-37. In the case of non-constitutional error, the standard is demanding and Huffman must show the error is "both particularly egregious and our failure to notice the error would result in a miscarriage of justice." *Id.* (internal quotation marks omitted). In the case of an alleged constitutional error, "the relaxed standard means we do not require the exceptional showing required to remand a case of non-constitutional error. Nevertheless, the defendant still bears the burden of showing that an exercise of our discretion is appropriate." *Dazey,* 403 F.3d at 1178. This Huffman cannot do. Particularly persuasive to us is the fact that the district court in this case, like the district court in *York,* made the "significant penological decision" to order Huffman to a community corrections facility for no more than 120 days. Furthermore, unlike the situation presented in *Overholt*, there is no statutory requirement that the district court authorize Huffman's early release from community confinement. For these reasons, together with those resulting in his failure to qualify under the third prong of plain error review, we

conclude Huffman has failed to satisfy the fourth prong as well.

**CONCLUSION**

Accordingly, we AFFIRM the order of the district court.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

04-3338, United States v. Michael Keith Huffman

**KELLY**, Circuit Judge, concurring.

I concur in the court's order and judgment that it was not plain error for the district court to order community confinement as a condition of supervised release. The district court's delegation to the probation officer to determine the length of confinement not to exceed 120 days is more troubling. I agree with the court's plain error analysis only to the extent that the unconstitutional delegation issue is a close call, and as such, it cannot be plain error. United States v. Toledo, 985 F.2d 1462, 1470 (10th Cir. 1993).