**UNITED STATES of America**

v.

**Eddie SMITH.**

**No. CR. 99–001–N.**

United States District Court,
M.D. Alabama,
Northern Division.

April 8, 1999.

---

John William Focke, II, Federal Defender, Montgomery, AL, for Eddie Smith, defendant.

Redding Pitt, U.S. Atty., Montgomery, AL, for U.S.

## ORDER

MYRON H. THOMPSON, District Judge.

Defendant Eddie Smith is charged with violating the conditions of his supervised release. He has moved to dismiss counts I, II, and III of the seven-count petition to revoke supervised release, which counts are based on Smith's positive test results on three drug tests. Smith contends that his supervisory probation officer did not have authority to administer the drug tests and that the results of those tests therefore should be inadmissible. The court held a hearing on these matters on March 23, 1999. For reasons to follow, the court will deny Smith's motion.

Additionally, at the March 23rd hearing, Smith informed the court of his desire to challenge the results of the positive drug tests. The court ordered the United States Probation Office to produce information regarding the reliability of the drug-test results, and the court then continued the revocation hearing to allow the probation office to obtain the reliability information and to allow Smith, after receiving the information, to review it. So as to avoid such delays in the future, the court now issues an order establishing the procedures to be followed by the parties and the probation office in all future revocation hearings before this court when a defendant challenges the reliability of drug tests or reports.

## I. BACKGROUND

On December 13, 1996, Smith pled guilty to conspiracy to possess and utter counterfeit securities in United States District Court for the Western District of North Carolina. On November 6, 1997, he was sentenced to five months in a community confinement facility and three years of supervised release. The judgment issued by the sentencing court listed as a standard condition of supervised release a requirement that he "participate in a program of testing and treatment or both for substance abuse if directed to do so by the probation officer, until such time as the defendant is released from the program by the probation officer; provided, however, that the defendant shall submit to a drug

test within 15 days of release ... and at least two periodic drug tests thereafter for use of any controlled substance."[1]

Smith was released from the community confinement facility on August 14, 1998, and began serving his term of supervised release. He then tested positive on a drug test, about which his probation officer in North Carolina took no action. His supervision was thereafter transferred to this district, the Middle District of Alabama.

On March 5, 1999, Smith's probation officer for the Middle District of Alabama petitioned for revocation of his supervised release. The petition alleges seven violations of the terms of supervised release: three counts of drug use, based on positive drug tests taken on January 27 and February 5 and 17, 1999; two counts of violation of the conditions of home confinement; one count of failure to submit payments towards his fine; and one count of failure to notify his probation officer within 72 hours of when his employment terminated.

## II. MOTION TO DISMISS DRUG COUNTS

■ Smith argues that the probation officer was without authority to impose drug tests for two reasons. First, he contends that the North Carolina sentencing court specifically ordered that he not be subjected to drug-testing. Second, because neither the sentencing court nor this court specifically ordered the drug tests, the

probation officer lacked authority to test him. The court rejects both arguments.[2]

### A. The Sentencing Court's Order

■ Smith argues that the North Carolina federal court that sentenced him, before his case was transferred to this court, ordered that he not be subjected to mandatory drug testing. In support of his argument, Smith points to the following statement on page three of the judgment issued by the sentencing court: "The condition for mandatory drug testing is suspended based on the court's determination that the defendant poses a low risk of future substance abuse."[3] Immediately before that statement, as before others on the form, there is a small underlined space in which the judge presumably was to place a check mark if appropriate. No mark is entered in the space. The judgment form therefore does not reflect that the judge decided to forgo imposing the otherwise mandatory drug testing requirements.

■ Even if the form could be read in the way Smith proposes, however, this court could not find that the judge decided not to impose drug testing. The transcript of the proceedings at the sentencing hearing determines the court's interpretation of the sentence imposed. *See United States v. Khoury,* 901 F.2d 975, 977 (11th Cir.1990) ("Where there is a discrepancy between the orally imposed sentence and the written order of judgment and committal, the oral sentence controls").[4] Here,

---

1. Exhibit A to Defendant's Memorandum of Law in Support of Motion to Dismiss, filed March 12, 1999, at 3.

2. The government contends that a motion to dismiss a petition for revocation of supervised release is not a proper vehicle for challenging the validity of the drug-testing condition imposed by the sentencing court and that this court therefore should not reach the merits of Smith's arguments. The government urges that Smith is in effect challenging the validity of his underlying sentence and therefore must file a motion attacking the sentence pursuant to 28 U.S.C.A. § 2255. In support of its argument, the government cites *United States v. Almand,* 992 F.2d 316 (11th Cir.1993), which

involved a defendant's attack on the validity of the imposition of a term of supervised release because he was not present when the court imposed the sentence. The instant case is distinguishable in that Smith does not attack the validity of his sentence, but instead merely contests the interpretation of one of the conditions imposed as part of the sentence. The court therefore rejects this argument.

3. Exhibit A to Defendant's Memorandum of Law in Support of Motion to Dismiss, at 3.

4. However, if the oral sentence is ambiguous, the reviewing court may consider extrinsic evidence to illuminate the intent of the district

the oral sentence imposes drug testing. The judge stated that Smith "shall comply with the standard conditions adopted by the court in the Western District of North Carolina."[5] These standard conditions included drug testing, which under 18 U.S.C.A. § 3583(d) judges were then required to impose.[6] The judge did not state during the sentencing hearing that he had decided to forgo the drug-testing requirement. However, since such testing was required by § 3583(d), silence was tantamount to imposition of the drug-testing requirement. This court therefore rejects Smith's argument that the sentencing court chose not to impose drug testing as a condition of supervised release.

### B. *Probation Officer's Discretion in Administering Drug Tests*

█ Smith's second argument is that the probation officer lacked authority to test him because the sentencing court did not specifically order the probation officer to subject Smith to long-term "urine surveillance." Smith bases his argument on 18 U.S.C.A. § 3583(d), which was amended as part of the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) to add the following provision:

"The Court shall order, as an explicit condition of supervised release, that the Defendant refrain from any unlawful use of a controlled substance and submit to a drug test within fifteen days of release or supervised release and at least two periodic drug tests thereafter (as determined by the Court) for use of a controlled substance."[7]

Before the 1994 amendment was enacted, Smith admits, probation officers had broad discretion to administer drug tests, without specific authorization from the sentencing court, to monitor whether a probationer was using controlled substances. However, he argues, with the above-mentioned amendment, Congress delegated to the courts sole authority to determine the number of drug tests that could be administered to a person on supervised release and removed that discretion from probation officers. According to Smith, because the sentencing court in his case did not specify the number of drug tests to which he would have to submit, the probation officer could administer no more than the three tests mentioned as part of the standard condition of supervised release.[8] Thus, Smith contends, the drug tests were illegally obtained and their results are therefore inadmissible.[9]

court at the time of sentencing. *Khoury, 901 F.2d at 977.*

5. Transcript of Sentencing Hearing, November 6, 1997, *United States v. Eddie Smith,* docket no. 96–cr–128–1 (W.D.N.C.).

6. The order of judgment lists drug testing as a standard condition of supervised release. *See* Exhibit A to Defendant's Memorandum of Law in Support of Motion to Dismiss, at 3. For discussion of § 3583(d), *see* section B, below.

7. The statute further provides that "[t]he [mandatory drug-testing] condition ... may be ameliorated or suspended by the court as provided in section 3563(a)(4)." 18 U.S.C.A. § 3583(d). The reference to § 3563(a)(4) is erroneous, and § 3563(a)(5) is the intended reference. *See* H.CONF.R. 105–405 (1997) (proposing amendment to change the reference to § 3563(a)(5)). Section 3563(a)(5) requires drug testing as a condition of probation, but allows for the condition to "be

ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant." Thus, § 3583(d) allows a district court to ameliorate or suspend drug testing if there is reliable sentencing information indicating that the person under supervised release presents a low risk of future substance abuse.

8. The standard condition imposed by the sentencing court mandated one test within 15 days of release and "at least two periodic drug tests thereafter." *See* Exhibit A to Defendant's Memorandum of Law in Support of Motion to Dismiss, at 3.

9. Even if the court were to accept his argument, Smith has provided no evidence of the total number of drug tests to which he has been subjected by the probation officers assigned to him. Thus, some of the tests at issue could be admissible even if the court were to accept his argument.

In support of his argument, Smith cites *United States v. Bonanno*, 146 F.3d 502, 510–11 (7th Cir.1998). In that case, the sentencing judge had ordered that the defendants submit to random drug tests at the discretion of the officer during their terms of supervised release. 146 F.3d at 510–11. The Seventh Circuit Court of Appeals, interpreting the 1994 amendment to § 3583(d) to require the district court to determine the number of drug tests to which a defendant is to be subjected, held that the district court had unlawfully delegated to the probation officer its responsibility to determine the number of drug tests to which the defendants would be subjected. *Id.* Relying on *Bonanno*, Smith contends that any drug tests taken by a probation officer granted discretion to administer an unlimited number of tests are illegal.

This court finds the Seventh Circuit's approach unpersuasive. First, by its plain language, the 1994 amendment to § 3583(d) requires judges to impose only a minimum of three drug tests as a condition of supervised release. The amendment uses the phrase "at least" to describe the number of tests the court must impose. It does not state that three drug tests should be the maximum unless otherwise specified by the court. Clearly then, the purpose of the amendment is to set a minimum number of drug tests that a court must impose, not a maximum. The presence of the phrase "as determined by the court" does not alter the analysis. That phrase provides the court with discretion to alter the minimum or total number of drug tests. It does not preclude a court from setting only a minimum number of tests.[10] To argue that the amendment requires courts to set a maximum number of drug tests and that, if the court fails to do so, the amendment itself then sets a maximum number of three drug tests and renders all drug tests after the third illegal, is to turn the clear purpose of the 1994 amendment—to require drug testing of released offenders—on its head. Adoption of this argument would transform the amendment from one intended to assure that probation officers, in exercising their discretion to conduct drug tests after 1994, perform a minimum of three tests in the routine case, into one that, after 1994, completely took away from probation officers the broad discretion they historically had, as part of their supervisory authority, to conduct drug tests randomly and when needed—that is, from an amendment that was intended to *expand* the requirements for drug testing into an amendment that essentially severely *restricted* the ease with which such tests had been performed in the past. Thus, the court rejects Smith's argument that because the court did not order an exact number of tests above three, the probation officer lacked authority to administer drug tests.

Second, *Bonanno*'s interpretation would impose severe limitations on the power of probation officers to assist the court in obtaining compliance with the terms of supervised release and would impose unworkable requirements on judges. Judges would have to decide, in many cases years before the release of the defendant, exactly how many drug tests would be required after the defendant's release from prison. Because circumstances could change considerably between the imposition of sentence and the beginning of supervised release, as well as during the term of supervised release, deciding an appropriate number of tests would be a difficult task. Furthermore, the probation officer is in a better position to make these decisions than the courts since they are in regular contact with the defendants and see when testing may be needed. Adoption of Smith's position also would result in probation officers having to come to court at odd times, and on

---

**10.** Thus, for instance, a court could determine that the probation department should administer at least 10 tests.

short notice in emergency situations, requesting modification of terms of supervised release so that they could conduct drug testing. The legislative history is devoid of any evidence of an intent to impose these significant limitations on the discretion and authority of probation officers. *See* H.R.CONF.REP. 103–711 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1839; H.R.CONF.REP. 103–694 (1994).

In any case, the court finds that 18 U.S.C.A. § 3603 grants probation officers authority to conduct drug testing of probationers beyond those tests specifically ordered by a sentencing court. Section 3603, which codifies the duties of federal probation officers, provides that probation officers shall "keep informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of ... a person on supervised release, who is under his supervision," 18 U.S.C.A. § 3603(2), "use all suitable methods, not inconsistent with the conditions specified by the court, to aid ... a person on supervised release who is under his supervision, and to bring about improvements in his conduct and condition," 18 U.S.C.A. § 3603(3), and "keep informed concerning the conduct, condition, and compliance with any condition of probation ... of each probationer under his supervision." 18 U.S.C.A. § 3603(7). These provisions clearly grant probation officers significant discretion in the means they use to accomplish a court's order. Further, although Congress presumably was aware of the considerable discretion accorded to probation officers under § 3603 when it enacted the VCCLEA, it did not amend the statute or enact any language expressing an intent to limit the authority of probation officers to impose drug testing.

The Ninth Circuit Court of Appeals reached a similar conclusion in *United States v. Duff,* 831 F.2d 176 (9th Cir.1987). In that case, which predated § 3583(d)'s requirement that judges impose drug testing as a condition of supervised release, the Ninth Circuit upheld a revocation of probation based on the defendant's failure of a drug test. Duff argued that because the district judge had not ordered drug testing as part of his sentence, the probation officer exceeded his authority by testing him for drug use. In rejecting Duff's argument, the court relied on 18 U.S.C.A. § 3655, which was recodified in 1987 as § 3603.[11] 831 F.2d at 178. The court held that § 3655's requirements that probation officers "use all suitable methods, not inconsistent with the conditions imposed by the court, to aid probationers and to bring about improvements in their conduct and condition" and "keep informed concerning the conduct and condition of each probationer under [their] supervision," conferred on probation officers the authority to order probationers to submit to drug testing even though the court had not specifically required drug testing as a probation condition. *Id.* The *Bonanno* court did not acknowledge or address § 3603 in reaching its decision.

In short, the court rejects Smith's argument that the probation officer lacked authority to order him to submit to drug testing. The standard condition imposed by the sentencing court mandated one test within 15 days of release and "at least two periodic drug tests thereafter." This provision authorized the probation officer to conduct three *or more* drug tests in his or

---

**11.** As the *Duff* court explained:

"In 1984, Congress replaced the Federal Probation Act with the Sentencing Reform Act of 1984, which was Chapter II of the Comprehensive Crime Control Act of 1984. *See* Pub.L. No. 98–473, §§ 211–212, 98 Stat.1987 (1983). The new Act [did] not take effect until November 1, 1987. *See* Pub.L. No. 98–473, § 235, 98 Stat.1987, 2031 (1984), amended by Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1987). After October 1987, the section entitled 'Duties of Probation Officers,' 18 U.S.C. § 3655 (1982 & Supp. III 1985), [was] codified at 18 U.S.C. § 3603. Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 212, 98 Stat. 1987, 2002 (1984); *see also* id. at 2001–04." 831 F.2d at 178 n. 1.

her discretion. Because the probation officer did not violate this mandate, the court will not exclude the drug-test results as illegally obtained.

## III.  CHALLENGES TO ADMISSIBILITY OF DRUG–TEST RESULTS

■ As stated, at the hearing held on March 23, 1999, Smith informed the court of his desire to challenge the results of the positive drug tests, and the court ordered the United States Probation Office to produce information regarding the reliability of the drug-test results. The court then continued the revocation hearing to allow the probation office to obtain the reliability information and to allow Smith, after receiving the information, to review it. However, before recessing the proceedings, the court questioned why the reliability information could not be routinely furnished to defendants before their revocation hearings, so as to avoid continuances in the future, when the basis of the revocation petition is a drug test. The Chief Probation Officer answered that obtaining such information is expensive and that more often than not defendants do not challenge the results of drug tests.

In *United States v. Grandlund*, 71 F.3d 507 (5th Cir.1995), *cert. denied*, 516 U.S. 1152, 116 S.Ct. 1031, 134 L.Ed.2d 108 (1996), the Fifth Circuit Court of Appeals, in an effort "to avoid reversals and remands, considering the delays and burdens imposed thereby on the defendant, prosecution, and the judicial system, and to assure the reliability of relevant, often essential, evidence," directed the use of the following procedures in all revocation hearings involving positive laboratory tests:

"1. A copy of the report of each relevant laboratory test is to be provided to the court and the defendant at least five days, computed in accordance with Fed. R.Crim.P. 45, before the date for the revocation hearing unless the trial court specifically directs a different period.

"2. At the same time the court and the defendant are to be provided a copy of the report on the chain of custody of each sample, including the date of collection, name of person(s) collecting and labeling same, and a description of the label.

"3. At the same time the court and the defendant are to be provided with a copy of an affidavit by a responsible laboratory employee attesting to laboratory procedures, including laboratory chain-of-custody routines, whether all required procedures were followed regarding the subject sample(s), and the result(s) of the testing.

"4. All of the foregoing instruments are to be made a part of the record in each revocation hearing."

71 F.3d at 511. This court believes that, in all future revocation cases before it, these *Grandlund* procedures should be imposed.

The *Grandlund* court, however, later made clear that these "directives [were] intended to apply only to future revocation hearings which the district court finds to be truly and legitimately contested" and that the directives "have no application in any revocation hearing which does not involve a valid challenge to the laboratory test(s) or report(s)." *United States v. Grandlund*, 77 F.3d 811 (5th Cir.1996) (per curiam). This court agrees with the Fifth Circuit that compliance with the procedures established in *Grandlund* is only warranted when the defendant contests the test or report. As the Chief Probation Officer for this district observed, obtaining such information is expensive and more often than not defendants do not challenge the results of drug tests.

The court will therefore require that, in all future revocation proceedings, the following procedures shall apply: (a) If the defendant desires to challenge a drug test or report of a drug test, he should so notify the court in writing, with service on the government, ten days before the hearing at which he plans to challenge such. (b) If the defendant files such notice, the gov-

ernment shall file the *Grandlund* materials with the court, with service on the defendant, five days before the hearing. (c) If the time before the hearing does not allow for (a) and (b), then the defendant should so notify the court and the government in writing as soon as possible so that the court can take appropriate steps.

## IV. CONCLUSION

Accordingly, for all of the above reasons it is ORDERED as follows:

(1) The motion to dismiss counts I, II, and III, filed by defendant Eddie Smith on March 12, 1999, is denied.

(2) In all future criminal revocation proceedings before this court:

(a) If the defendant desires to challenge a drug test or report of a drug test, he should so notify the court in writing, with service on the government, ten days before the hearing at which he plans to challenge such;

(b) If the defendant files such notice, the government shall file the *Grandlund* materials with the court, with service on the defendant, five days before the hearing; and

(c) If the time before the hearing does not allow for (a) and (b), then the defendant should so notify the court and the government in writing as soon as possible so that the court can take appropriate steps.