**UNITED STATES of America,**

v.

**Ronald F. BLANCHARD, Defendant.**

**Case No. 7:07–CR–31–001 (WLS).**

United States District Court,
M.D. Georgia,
Valdosta Division.

July 24, 2009.

Kenneth Alan Dasher, Albany, GA, for Plaintiff.

Stephen R. Glassroth, Demetria Nicole Williams, Federal Defenders of the MD GA, Catherine Michelle Leek, Macon, GA, for Defendant.

SANDS, District Judge.

Before the Court is Defendant's Motion to Dismiss and/or Strike from the Petition for Action on Probation Any Allegations Beyond the First Three Drug Tests (Doc. 13). For the following reasons, Defendant's Motion is **DENIED.**

## BACKGROUND

On August 2, 2006 in the Southern District of Ohio, Defendant was sentenced to a term of five years probation for the offense of providing a place for others to store and from which to distribute cocaine base. Defendant did not appeal his sentence. Jurisdiction was transferred to this Court on September 10, 2007. (Doc. 1).

Defendant's sentence provides in pertinent part:

> [T]he defendant shall participate in a program of testing and treatment for alcohol and controlled substance abuse, and mental health treatment as directed by the U.S. Probation Office and until such time as the defendant is released from said programs by the U.S. Probation Office.

> The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within fifteen (15) days of placement on probation and at least two periodic drug tests thereafter, as directed by the probation officer.

(Doc. 1–4). The U.S. Probation Office filed its Petition for Action on Probation on May 22, 2008, alleging that Defendant violated a mandatory condition of supervision by possessing or using a controlled substance. The petition alleges that Defendant submitted urine specimens on July 14, 2007 and March 24, 2008 which tested positive for cocaine. Accordingly, the Government seeks to revoke Defendant's probation. Defendant stipulates to the drug test results but asserts that the probation officer lacked authority to conduct the drug tests, and, therefore, the Petition for Action on Probation should be dismissed.[1]

---

1. Both Defendant and the Government agree that the drug tests in which Defendant tested

## DISCUSSION

In opposition to Defendant's motion to dismiss, the Government first asserts that Defendant has waived any objection to the terms of his probation since Defendant did not appeal or otherwise challenge his sentence. Defendant states that he does not object to the terms of his probation, rather, he objects to the *interpretation* of the terms of his probation. Thus, Defendant argues that a challenge to the interpretation of the terms of his sentence is readily distinguishable from an objection to one of the terms of the sentence or the sentence itself. *See United States v. Smith,* 45 F.Supp.2d 914, 916 n. 2 (M.D.Ala.1999) (stating that a defendant's challenge to the interpretation of the terms of his supervised release does not require a 28 U.S.C. § 2255 motion discussed in *United States v. Almand,* 992 F.2d 316 (11th Cir.1993)).

In *Almand,* the defendant appealed the revocation of his supervised release. 992 F.2d at 317. Almand asserted that supervised release never should have been imposed as part of his sentence since the sentencing court originally ordered him to imprisonment but *sua sponte* amended his sentence four months later to include supervised release.[2] Almand did not appeal his sentence. Almand argued at his revocation hearing following positive drug tests that since he was not present in court when supervised release was imposed, the sentence was invalid. The Eleventh Circuit Court of Appeals denied Almand's appeal, held that Almand's argument was improperly raised at the revocation hearing and found that his sentence was presumed valid unless vacated pursuant to 28 U.S.C. § 2255.

■ Defendant Blanchard's motion alleges that the sentencing court was required to set a maximum number of drug tests, and, therefore, since the court did not, Defendant's probation should not be revoked. Defendant's challenge amounts to an attack on the validity of the drug testing probation condition, which Defendant could (and should) have raised in an appeal of his sentence. *See United States v. Machado–Gonzalez,* 313 Fed.Appx. 216, 218 (11th Cir.2009) (stating that an appellate court will not consider challenges to the validity of a sentence that are raised for the first time in a supervised release revocation hearing) (citing *Almand,* 992 F.2d at 317–18). This Court does not adopt Defendant's interpretation of the case law and disagrees with the *Smith* decision's one footnote interpretation of *Almand.*

■ Notwithstanding Defendant's argument to the contrary, Defendant's motion amounts to an attack on his sentence. In effect, Defendant contends a condition of his sentence is invalid for incompleteness, i.e., the court failed to state a maximum number of drug tests. Thus, waiver is applicable here and the plain error standard applies. For plain error, Defendant must show (1) error (2) that was plain, and (3) that the error affected substantial rights. *United States v. Zinn,* 321 F.3d 1084, 1087 (11th Cir.2003). If these three prongs are met, the Court may correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Heath,* 419 F.3d 1312, 1314 (11th Cir.2005) (internal citation omitted).

■ Defendant asserts that pursuant to the statute, the sentencing judge was required to set the maximum amount of drug tests to which he could be subjected. Thus, the issue here is whether or not the

---

positive occurred after his first three drug tests.

2. The sentencing court erroneously omitted mandatory supervised release following imprisonment.

sentence is legally defective and as a result a judicial function was improperly delegated to a probation officer when the trial court imposed mandatory drug testing upon Defendant as part of his sentence but did not include the maximum number of drug tests. A probation officer, though an "arm of the court," is limited to performing "a ministerial act or support service." *United States v. Nash*, 438 F.3d 1302, 1304–05 (11th Cir.2006). Thus, an Article III court may not delegate its judicial authority of sentencing to a probation officer, but may "delegate to the probation officer the details of where and when the condition will be satisfied." *Id.* (finding improper delegation where sentence stated "as deemed necessary by the Probation Officer, the defendant shall participate in mental health counseling") (internal citation omitted); *see, e.g., United States v. Heath*, 419 F.3d 1312, 1315 (11th Cir.2005) (finding improper delegation where sentence stated "defendant shall participate [in mental health treatment] if and as directed by the probation office"); *United States v. Taylor*, 338 F.3d 1280, 1283–84 (11th Cir. 2003) (finding proper delegation where defendant required to participate in mental health program approved by probation officer including submission to polygraph testing); *United States v. Zinn*, 321 F.3d 1084,1092 (11th Cir.2003) (finding proper delegation where sentence stated defendant "shall participate as directed in a program of mental health treatment ... approved by the probation officer").

Defendant's sentence closely tracks the statute defining requisite conditions of probation, which states as follows:

> The court shall provide, as an explicit condition of a sentence of probation—(5) for a felony, a misdemeanor, or an infraction that the defendant refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance, but the condition stated in this paragraph may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant.

18 U.S.C. § 3563(a)(5).

 As this is a matter of statutory interpretation, it "begins and ends with the text of the statute so long as the text's meaning is clear." *Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir.2008). Where the statutory text is clear, a court need not "resort to legislative history." *Ratzlaf v. United States*, 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). However, where a statute is ambiguous, a court may utilize the canons of statutory interpretation and legislative history to resolve the ambiguity. *See United States v. Awadallah*, 349 F.3d 42, 51 (2d Cir.2003).

Three circuit courts, the First, Seventh, and Ninth Circuits have interpreted a similar statute [3] as requiring the sentencing judge to set a maximum number of drug tests, holding that failure to do so amounts to an improper delegation of authority to a probation officer. *See United States v. Stephens*, 424 F.3d 876 (9th Cir.2005); *United States v. Melendez–Santana*, 353 F.3d 93, 103 (1st Cir.2003), *rev'd in part on other grounds, United States v. Padilla*, 415 F.3d 211 (1st Cir.2005); *United States v. Bonanno*, 146 F.3d 502, 510–11 (7th Cir.1998). Contrarily, the Middle District of Alabama sided with the Govern-

---

**3.** The Supervised Release statute, 18 U.S.C. § 3583(d), erroneously references 18 U.S.C. § 3563(a)(4) instead of 18 U.S.C. § 3563(a)(5). *See Smith*, 45 F.Supp.2d at 917.

ment's position that the statute does not require a sentencing court to specify the maximum number of drug tests. *See Smith*, 45 F.Supp.2d at 914. Defendant urges that this Court adopt the legal standard of the First, Seventh, and Ninth Circuit courts of appeals. While the Eleventh Circuit has not ruled upon the issue presented here and three circuit courts have, this Court is not cowed into adopting their statutory interpretation and finding improper delegation simply because they outnumber the contrary interpretation. Respectfully, the holdings of those courts are not binding on this Court. Courts routinely disagree when interpreting statutes and construing improper delegation, *e.g.*, in the restitution context.[4]

Defendants in *Bonanno* appealed their sentence following conviction and the Seventh Circuit found that the sentencing court should have specified the maximum number of drug tests pursuant to mandatory supervised release. 146 F.3d at 511. The court applied its reasoning in the restitution context and held that just as sentencing courts may not give probation officers discretion to set a restitution payment schedule, the supervised release statute requires the sentencing court to determine the maximum number of drug tests and does not give probation officers discretion to determine the number of drug tests.

In *Stephens*, the defendant appealed the district court's sentence which was imposed following positive drug tests for cocaine, in violation of his supervised release conditions. 424 F.3d at 878. The Ninth Circuit held that the sentencing court's failure to set a maximum number of drug tests amounted to improper delegation of

authority to a probation officer. The Ninth Circuit interpreted the statute as establishing a conditional minimum of three drug tests, and requiring courts to set the maximum number of drug tests. The court stated that its interpretation was grounded in the plain terms of the statute and that drug testing apart from a drug treatment program amounts to a penological decision which probation officers are not permitted to make. This Court observes, however, that the statute is silent as to any maximum number of tests or that there should even be a maximum.

In *Melendez–Santana*, the defendant appealed his sentence which included drug testing pursuant to supervised release. 353 F.3d at 93. (*Bonanno* along with *Melendez–Santana* and *Stephens*—cases relied upon by Defendant in his motion to dismiss—were direct attacks on the sentence, not simply its "interpretation.") The First Circuit vacated the defendant's sentence since it found that the statute required sentencing courts to set a maximum number of drug tests. The court held that the plain language of the statute required a maximum and it reached its conclusion in part, on placement of the parenthetical "(as determined by the court)." *Id.* at 104. The court explicitly rejected *Smith*'s statutory analysis. *See id.* The court held that removal of the parenthetical would still result in a requirement that the sentencing court order a minimum of three drug tests pursuant to the supervised release statute, so its inclusion must "mean that the court is required to determine the maximum number of drug tests to be performed beyond the

---

4. This Court's statutory analysis is also informed by cases construing the restitution statute, which directs courts to specify the schedule and manner in which restitution must be paid. 18 U.S.C. § 3664. Despite most circuit courts of appeals' reasoning that this statute prohibits sentencing courts from

delegating restitution payment schedules to probation officers, the Eleventh Circuit found that the statute does not preclude such delegation. *See United States v. Fuentes*, 107 F.3d 1515, 1529 n. 25 (11th Cir.1997) (noting that the Third, Fourth, Fifth, and Seventh circuits find improper delegation).

three that are required." *Id.* Further, the First circuit reasoned that requiring courts to set a maximum number of drug tests results in a range within which probation officers may test, allays practical concerns of determining the number of drug tests years before a defendant is released. This analysis begs the question of-and emphasizes—testing only in view of its potential use for revocation and not its real or fundamental purpose which is to require prohibition of illegal drug use by all appropriately identified defendants and to detect usage. Such drug usage would be in violation of a statutorily required specific condition of supervision. In short, the condition is intended to prevent and detect drug abuse by probationers.

In *Smith,* defendant tested positive for drugs three times while on supervised release. Defendant filed a motion to dismiss the petition for revocation of supervised release. 45 F.Supp.2d at 916. The court held that the plain language of § 3583(d) only required judges to impose a minimum of three drug tests and did not require a set maximum at sentencing. (In context, it is also reasonable to interpret "as determined by the court" to refer to the simple scheduling of the second and third test by the sentencing judge.) The court reasoned that the phrase "as determined by the court" provided discretion to alter the minimum or total number of drug tests, but did not require a maximum. § 3583(d). *Id.* at 918. The court found that the statute's purpose was to expand drug testing of released offenders and the purpose of the statute would be turned on its head if tests conducted beyond the initial three were barred where a court failed to set a maximum number. The court also noted that the legislative history supported a broadening of drug testing and it opined that requiring courts to determine the number of drug tests years before an in-

mate is released from prison would impose "unworkable requirements on judges" and severely limit probation officers' discretion and authority. *Id.* It would also defeat or work against the clear purpose of the statute.

Upon review of the aforementioned cases cited by the parties, this court notes that the cases cited each concern the supervised release statute, which explicitly references the probation statute. The supervised release statute's reference to the probation statute directs sentencing courts to tools which may ameliorate or avert the need for drug testing—"defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant." 18 U.S.C. § 3563(a)(5). The First Circuit based its reasoning that a maximum number of drug tests must be set, in part, upon this provision in the probation statute and the Ninth Circuit adopted the same reasoning. *See Melendez–Santana,* 353 F.3d at 104; *see also Stephens,* 424 F.3d at 883. The probation statute explicitly details the methods by which the minimum number of drug tests may be lowered or omitted entirely. Nothing within the text of the probation statute points towards a maximum number of drug tests that must be set. Further, the language of the statute only specifically instructs regarding a minimum. By inclusion of the term "as determined by the court" the statute requires a sentencing court to not only conduct a minimum of three drug tests, unless it finds those tests unnecessary; the statute allows the court to set a higher minimum number of drug tests. This court finds that the phrase "as determined by the court" points towards the minimum number of drug tests *not* a maximum or the requirement to impose one.[5]

---

5. The Court's interpretation pertains only to the probation statute, 18 U.S.C. § 3563(a)(5).

█ This Court finds that the sentencing court did not commit error.[6] An error cannot be plain unless it is "clear under current law." *United States v. Aguillard,* 217 F.3d 1319, 1321 (11th Cir.2000) (internal citation omitted). Neither the Supreme Court nor the Eleventh Circuit Court of Appeals has addressed this issue. This Court finds that 18 U.S.C. § 3563(a)(5) does not require a sentencing judge to set a maximum number of drug tests.

█ No detailed analysis of legislative history is required to detect that Congress was addressing drug abuse by those serving a sentence, specifically those under supervision. The statute requires drug testing for all sentenced defendants unless the sentencing judge finds such testing unnecessary consistent with the provision of § 3563(a)(5). Unless the provision is waived by the Court, the defendant must be subjected to a minimum of three drug tests, the first within fifteen days of sentencing. The statute establishes a minimum number of required tests for defendants under supervision. Beyond that minimum, the statute is silent.

Obviously, it is more difficult for a defendant to avoid detection of drug abuse over a period of time involving three tests, than a single test shortly after beginning to serve the supervised portion of his sentence. This applies even where drug treatment is not ordered. The fact that drug treatment was ordered, as in Defendant's case, is significant. In those circumstances, the court has not only ordered minimum testing as required by the statute, but has also determined that the

Defendant is in need *now* of drug treatment. The court having made the determination that drug treatment is needed and having authorized testing; it is clear that testing thereafter as directed by the probation officer falls well within the Court's order requiring testing and treatment. In the latter case, testing is not merely compliance with the minimum testing and avoidance of the use of illegal controlled substances under the statute, but also addresses the court's imposed condition requiring participation in broader drug treatment. It can hardly be argued that prohibited drug use and drug testing is not a known component of compliance with broader drug abuse treatment. It is counterproductive and inconsistent with the statute and the order of the Court to permit a defendant to avoid the risk of revocation simply because his continued illegal drug use was discovered by anticipated testing which was not finitely serialized by the sentencing court.

The Court also notes that the concern highlighted in *Smith* regarding sentencing courts' imposition of arbitrarily high drug testing maximums years before an inmate's release proved perceptive. In *United States v. Guy,* the 7th Circuit affirmed the sentence by the trial judge which included a requirement that defendant submit to 104 drug tests per year, despite no history of drug abuse or any positive drug tests. 174 F.3d 859, 862 (1999). Thus, having a sentencing court choose a number out of a hat, metaphorically, does not necessarily serve the best interests of defendants (nor accomplish the rehabilitative purpose apparent from the

---

6. Both the First and Ninth Circuits hold that sentencing courts err when they do not set a maximum number of drug tests, but also hold that the errors *do not* rise to the level of plain error. *See United States v. Maciel–Vasquez,* 458 F.3d 994, 996 (9th Cir.2006) ("[W]e conclude that the improper delegation that oc-

curred here does not rise to the level of plain error, since it neither affects substantial rights nor impugn[s] the fairness, integrity or public reputation of the criminal proceedings as a whole.") (quoting *United States v. Ortiz–Torres,* 449 F.3d 61, 75–76 (1st Cir.2006)).

statutory scheme of 18 U.S.C. § 3563). Defendant's interpretation would likely result in courts requiring high numbers of drug tests lest drug abusing supervised defendants avoid revocation simply because the number of tests were set too low. Drug testing and treatment probation conditions are imposed to give inmates assistance upon their re-entry into society. They are not merely tools of punishment. Probation officers, utilizing their broad powers conferred by 18 U.S.C. § 3603 are uniquely qualified to administratively supervise the details of court ordered drug testing and treatment programs.

 Defendant has a history of drug abuse. It does not appear that Defendant has completed a drug treatment program. Defendant's statutory interpretation would prevent the probation officer from enforcing a specific condition of his sentence, despite prior determinations of continued drug abuse, here verified by the complained of testing. Allowing Defendant to continue on probation without threat or risk of revocation even while Defendant abuses a controlled substance has the very real consequence of not lifting him from the cesspool of drug abuse but turning a blind eye to his violation of drug laws. Since this Court finds that the statute properly authorizes a sentencing court to set a minimum of at least three drug tests without determining a maximum number of drug tests in advance, the sentencing court did not improperly delegate authority to the U.S. Probation Office or fail to comply with the probation statute.

Defendant does not argue that the tests were unnecessary, unreasonable, or unhelpful to successfully overcoming drug abuse, or even inconsistent with the purpose of the statute; but simply that the continued abuse, now discovered, should not result as grounds for finding a violation of the conditions of his sentence be-

cause the Court didn't say he should have a maximum number of drug tests, any unlimited number.

Not only is Defendant's interpretation belied by the statute, but taken to its extreme it unreasonably cuts against his own best interests. For example, if the sentencing court had set testing at 104 (approved by Seventh Circuit) and he was successfully treated early in his supervision, he would be subjected to dozens upon dozens of unnecessary tests. On the other hand, if set at three (3) tests and his abuse continued, the probation office would be rendered helpless under the sentence to detect the abuse and assist him; without returning to the Court for a modification which arguably might not be available in that under Defendant's interpretation and the circuit decisions he cites the condition was found totally invalid.

Although a return to the Court might appear an easy solution, in reality, it would be an undue and unnecessary additional burden on the Court and the probation office (an invalid sentence might not be correctable). Defendant's interpretation would place an undue burden on the Court clearly not required by the statute itself. The statute simply establishes a minimum and wisely leaves the rest to the sentencing court. The sentencing court having complied with the statute and additionally ordered drug treatment properly delegated the number and frequency of additional testing under the testing order to the probation officer.

Defendant's motion gives the Court rise to address what might be termed an implicit concern—abuse of authority or harassment by probation officers. The Court is aware that it is often inconvenient to submit to drug testing, as probationers may have to travel to a distant location at

a set time upon short notice, multiple times within a month. Nevertheless, probation officers, as arms of the court with significant administrative authority, are uniquely suited to aid the Court in conducting drug testing after it has been ordered by a sentencing court. However, the Court notes that Defendant has not alleged any improper conduct, abuse of authority, or harassment by his probation officer beyond his technical challenge to the number of tests administered.

Since plain error is not found herein, Defendant, therefore, would be required to attack his sentence by a § 2255 motion at this stage. Nevertheless, this Court, in view of the possibility that the Circuit upon review might disagree, also addressed the statute as challenged. Despite that, neither basis advanced by Defendant in his motion constitutes sufficient grounds to dismiss the revocation petition. Defendant's sentence was proper.

### CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss and/or Strike from the Petition for Action on Probation Any Allegations Beyond the First Three Drug Tests (Doc. 13) is **DENIED.** Accordingly, proceedings shall go forward on the petition as it is constituted.